No. 9757.

## MILLER *v.* THE STATE.

CRIMINAL LAW.—*Constitutional Law.—Indictment.*—The proviso in the felony act of May 31st, 1861, 2 R. S. 1876, p. 451, to the effect that, in an indictment under that act, it should not be necessary to charge the particular felony which it was the purpose or object of the persons combining to commit, is unconstitutional, against natural right and void.

SAME.—*Combination to Obtain Money by False Pretences.—Sufficiency of Indictment.*—An indictment under the act referred to, which charges the defendants with feloniously uniting and combining with each other for the purpose of committing the felony of obtaining the money of another by means of certain false pretences, and which charges facts sufficient to show that the defendants, if they had obtained such money by their false representations of alleged existing facts, would have been guilty of that particular felony, is sufficient to withstand a motion to quash. In such case, the indictment need not show that any money was obtained by means of the false pretences.

SAME.—*Question of Fact.—Indictment.*—Whether the false pretences and representations stated in such an indictment are such as would deceive any one, is a question of fact and not of law.

SAME.—*Demurrer to Evidence.*—A demurrer to evidence is not recognized or provided for in the criminal code of procedure and has no place in the administration of the criminal laws of this State.

From the Marion Criminal Court.

*J. M. Cropsey* and *C. M. Cooper*, for appellant.

*D. P. Baldwin*, Attorney General, *W. W. Thornton* and *J. B. Elam*, Prosecuting Attorney, for the State.

HOWK, J.—In this case, the appellant and one William Morrison were jointly indicted by the grand jury of said court, at its January term, 1881. A separate trial was awarded the appellant, Miller; and, as to him, the issues joined by his plea of not guilty were submitted to a jury for trial. And the State having introduced its evidence and rested, the appellant demurred to such evidence; which demurrer was overruled by the court, and to this ruling he excepted. The jury having heard the arguments of counsel, and the instructions of the court, afterwards returned their verdict to the effect that the

Miller *v.* The State.

appellant was guilty as charged in the indictment, and they assessed his punishment at imprisonment in the State prison for two years, and a fine of one dollar. The appellant's motions for a new trial, and in arrest of judgment, having each been overruled, and his exception saved to each of said rulings, the court rendered judgment on the verdict.

In this court, the appellant has properly assigned, as errors, the following decisions of the criminal court:

1. In overruling his motion to quash the indictment;
2. In overruling his demurrer to the State's evidence;
3. In overruling his motion for a new trial; and,
4. In overruling his motion in arrest of judgment.

The appellant has also assigned, as errors, certain other rulings of the court below, which might have constituted good causes for a new trial, if they had been assigned as such causes, in his motion for such new trial. If these other rulings were not assigned as causes for a new trial in the motion therefor, their assignment here, as errors, would present no question for the decision of this court. And if such rulings were assigned as causes for new trial, in the motion therefor, then the only proper assignment here of error would be, that the court had erred in overruling the appellant's motion for a new trial. For this assignment of error would bring before this court, for consideration and decision, every question presented by or arising under every cause for a new trial properly assigned in the appellant's motion therefor. This practice is so long and so firmly established, that it would be a work of supererogation to cite authorities in its support.

The indictment in this case charged in substance, that the appellant, Miller, and William Morrison, on the 6th day of May, 1881, at and in Marion county, Indiana, did feloniously and knowingly unite, combine, conspire, confederate and agree with each other, for the object and purpose and with the intent to obtain moneys from one Joseph Lewark, and in pursuance of said object, purpose and intent, did then and there, feloniously, knowingly, purposely, designedly, and with

the intent to defraud the said Lewark, falsely pretend and represent to him, the said Lewark, that they, the said Miller and Morrison, were the owners of a quantity of gold bullion, in two pieces, which said bullion they had brought from the western mines and then had in their possession, which said bullion was worth $21,000, and a little over, to wit, a fractional part of a thousand dollars over and above said twenty-one thousand dollars; that said Morrison was very anxious to sell his interest, which was a one-half interest, in said bullion, for the reason that both said Morrison and his invalid brother were greatly in need of money; that said bullion had been obtained in such a way that they did not desire any one to know that they had it, unless he be a friend; that, for this reason, they would not put it in any bank or offer it for sale in any public manner; that they had it concealed near White river, in said county by burying it in the earth, and then and there induced the said Lewark to go to the place where said bullion was said to be concealed, and he was there met by said Miller and Morrison, and one of the said pieces of metal, called gold bullion, was then and there removed from the earth and bored into, with an auger, in two places, in said Lewark's presence, and by his assistance, and the borings and particles of said metal, obtained by said boring, were then and there wrapped in a piece of paper by said Miller and Morrison, as samples of said metal, and said Lewark was assured by said Miller and Morrison, that he, the said Lewark, should have an opportunity to have said borings examined by a competent assayer, to satisfy himself that the metal was as represented by them, before he, the said Lewark, should pay for the interest of the said Morrison therein; for which said interest the said Morrison agreed and offered to take $2,500 of the moneys of said Lewark, being current moneys of the United States, in full payment of and for his share in said piece of metal, and another piece of similar size, quality and value, which was not exhibited to said Lewark, but which said Miller and Morrison represented to said Lewark, as afore-

said, belonged to them, and was near the same place; but instead of delivering to said Lewark the said borings and particles of metal, so obtained as aforesaid, for the purpose of having their quality and value tested, as they, the said Morrison and Miller, promised and falsely pretended to do, they, the said Miller and Morrison, then and there delivered to said Lewark certain other and different particles of metal, wrapped in another and different piece of paper, with the fraudulent intent and purpose that he, the said Lewark, should have said last-mentioned particles examined and tested, instead of the borings and particles obtained from said piece of metal as aforesaid, and said large piece of metal so removed from the earth and exhibited to said Lewark, as aforesaid, and into which said boring was done as aforesaid, was a heavy piece of metal, weighing about thirty-one pounds, oblong in shape, with smooth surfaces, and four square corners, and having the color and general appearance of gold bullion; and all of said false pretences, so made as aforesaid, were made by said Miller and Morrison, in the manner and form aforesaid, with the intent, object and purpose of obtaining then and there and thereby, feloniously, purposely and designedly, and by color and means of said false pretences, the sum of $2,500 of the moneys of said Lewark, of the value of $2,500, in the current moneys of the United States, by selling to him, the said Lewark, said pretended share of said Morrison in said pieces of metal, and receiving said moneys in payment therefor.

Whereas, in truth and in fact, said piece of metal so exhibited to said Lewark was not gold bullion, nor composed of gold in any form, and was not of the value of $21,000, or of $10,000, but was composed of almost worthless metals as compared with gold, being composed wholly of metals not precious in character, and the whole piece not being then and there of the value of five dollars; and said piece of metal was washed over with a substance of the color of gold and having the same general appearance, while within it was of a wholly different appearance, and said particles of metal, actually deliv-

·ered to said Lewark to be tested, were gold obtained by said Miller and Morrison in some other way than by boring or ·otherwise obtaining them from said piece of metal, and were not specimens of its character, quality or value; all of which they, the said Miller and Morrison, well knew, but did then ·and there feloniously and knowingly unite, combine, con- ·spire, confederate and agree with each other to make said false pretences to said Lewark, in manner and form aforesaid, for the object and purpose of deceiving said Lewark thereby and inducing him to rely thereon, and, by reason thereof, to buy ·said alleged interest of said Morrison in said metal, and de- liver to them, said Miller and Morrison, said money of said Lewark in payment therefor, and so obtain said money, felo- niously and designedly, and by color and means of said false ·pretences, and by means of said union, combination and con- ·spiracy between them, the said Miller and Morrison, contrary ·to the form of the statute, etc.

It is manifest from the phraseology of the indictment, in this case, that the appellant and his co-defendant, Morrison, were therein charged, or intended to be charged, with the commission of one of the felonies which are defined in "An ·act defining what shall constitute certain felonies, and fixing ·the penalties therefor," approved May 31st, 1861. This act ·provided as follows:

"That any person or persons who shall unite or combine ·with any other person or persons for the purpose of commit- ·ting a felony, or any person or persons who shall knowingly ·unite with any other person or persons, or body, or associa- tion or combination of persons, whose object is the commis- ·sion of a felony or felonies, shall be guilty of a felony, and ·upon conviction shall be fined in any sum not exceeding five thousand dollars, and be imprisoned in the state-prison not less than two, nor more than twenty-one years: *Provided,* That in any indictment under this section, it shall not be nec- essary to charge the particular felony which it was the purpose of such person or persons, or the object of each [such] person

or persons, or body, association or combination of persons to commit." 2 R. S. 1876, p. 451.

In construing this statute, it has been uniformly held by this court, and, we think, correctly so, that the proviso therein " is in conflict with the constitution and against natural right, and hence is absolutely void." *Landringham* v. *The State*, 49 Ind. 186; *The State* v. *McKinstry*, 50 Ind. 465; *Scudder* v. *The State*, 62 Ind. 13.

It would seem from the language of the indictment in the case now before us, that it was intended to charge therein that the appellant and his co-defendant, Morrison, had feloniously united and combined with each other with the intent to commit the particular felony which is defined in section 27 of the felony act of June 10th, 1852. So far as applicable to this case, this section 27 provides as follows: " If any person, with intent to defraud another, shall designedly, by color of any false token * * or any false pretense, * * obtain from any person any money, * * * or thing of value; such person shall, upon conviction thereof, be imprisoned," etc. 2 R. S. 1876, p. 436.

It is earnestly insisted by the appellant's counsel that the indictment under consideration is radically defective in this, that it did not state such false representations of alleged existing facts, or such false pretenses, as would or could deceive a man of common intelligence. We have a number of cases, in the reported decisions of this court, in which it has been held that it was not every false pretense on which a criminal charge might be predicated, but that such representations of alleged existing facts, as might deceive a man of common intelligence, would support an indictment for obtaining money or goods by means of false pretenses. *Clifford* v. *The State*, 56 Ind. 245; *The State* v. *Snyder*, 66 Ind. 203; *Miller* v. *The State*, 73 Ind. 88.

It can hardly be said, however, that this question is presented in this case; for the indictment here does not charge the appellant with the felony of obtaining money by means of false pretenses. The charge against the appellant is, that he and his co-defendant had feloniously united with each

other with the intent to commit the felony of obtaining Lewark's money by means of certain false pretences. It was not charged, nor intended to be charged, in the indictment, that the felony of obtaining Lewark's money by means of the alleged false pretences had been consummated; but, on the contrary, it is fairly inferable from the indictment, that the appellant and his co-defendant did not succeed in getting any money. Besides, we may well conclude that if the particular felony had been fully consummated by the appellant and his co-defendant, they would have been indicted therefor, and not upon the charge that they had feloniously united with each other with the intent to commit such felony.

The questions presented by the alleged error of the trial court, in overruling the motion to quash the indictment, seem to us to be these: *First.* Did the indictment charge the appellant and his co-defendant, Morrison, in plain and concise language, with feloniously uniting with each other for the purpose of committing the particular felony therein mentioned? and, *secondly.* Were the facts stated in the indictment sufficient to show that, if by means of their false representations of alleged existing facts, the appellant and his co-defendant had obtained said Lewark's money, they would have been guilty of the particular felony defined in said section 27, above quoted, of the felony act of June 10th, 1852? We are of the opinion that both of these questions must be answered in the affirmative; and, therefore, it follows that the indictment was sufficient, and the appellant's motion to quash it was correctly overruled.

The appellant's counsel say that "the pretences and representations stated in the indictment are not such as would deceive any one; they were patent, frivolous and absurd, and could in no event deceive." This may be true, in fact; but, if so, it was purely a question of fact, which might very properly have been submitted to the determination of the jury. We can not say, as matter of law, however, that the pretences and representations were not such as would deceive any one; and the question can only be considered, as here presented, if

considered at all, as a question of law. The argument of the appellant's counsel against the sufficiency of the indictment is based chiefly upon the assumption that it was bad because it did not contain the averments which would have been necessary to constitute a good indictment for obtaining money by means of false pretences. This assumption is erroneous, and, therefore, the argument is unsound.

It is also claimed by the appellant's counsel that the court erred in overruling his demurrer to the evidence. Counsel say: "The court erred in refusing to take the case from the jury, upon the defendant's demurrer to the evidence. This is a common practice in civil procedure, and there is no reason why it should not follow in the criminal practice." We are of the opinion, however, that a demurrer to the evidence has no place in the administration of the criminal laws of this State. It is not recognized or provided for in our criminal code of procedure. It is not in harmony, but, in some particulars, it is in conflict, with the authorized and established practice and usages, in the trial of criminal causes, in the courts of this State. The trial court ought not, in this case, to have entertained the appellant's demurrer to the evidence, and, indeed, it may be doubted if the court did entertain such demurrer; but, if it did, there was no error in its ruling thereon. In civil cases, the demurrer to the evidence must set out, at length and in full, the evidence in the demurrer. *Griggs* v. *Seeley*, 8 Ind. 264; *Lindley* v. *Kelley*, 42 Ind. 294; *Strough* v. *Gear*, 48 Ind. 100. In the case at bar, the appellant did not set out any evidence in what is called his demurrer to the evidence; so that, even if such demurrers were tolerated by, or admissible under, the criminal practice and law of this State, the appellant's demurrer would be so defective that it would present no question for the decision of this court.

The evidence is not in the record, and no other question than those decided has been presented or discussed by the appellant's counsel. We have found no error in the record.

The judgment is affirmed, at the appellant's costs.