CURTIS BATES A/K/A CURTIS REED *v*. STATE OF INDIANA.

[No. 876S235. Filed September 2, 1977.]

*George K. Shields,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Elmer Lloyd Whitmer,* Deputy Attorney General, for appellee.

PRENTICE, J.—Defendant (Appellant) was charged with kidnapping, conspiracy to commit murder and murder. He was found not guilty upon the murder count but was convicted of kidnapping and conspiracy to commit murder. He was sentenced to life imprisonment upon the kidnapping conviction and to imprisonment for an indeterminate term of not less than two nor more than fourteen years and fined $5,000.00 upon the conspiracy conviction. This direct appeal presents three issues:

(1) Admissibility of a photograph of the decedent taken following his death by gunshot wounds.

(2) Entitlement of the defendant to twenty peremptory jury challenges.

(3) Sufficiency of the evidence to sustain the guilty verdicts.

## ISSUE I

Upon this issue, this case is not unlike *Ferrier* v. *State,* (1977) 266 Ind. 117, 361 N.E.2d 150, in that the defendant's argument on appeal is addressed to the relevancy of the exhibits and charges a tendency to inflame the minds of the jurors, whereas at trial, only the inflammatory aspect was relied upon. We, nevertheless, will consider the question as properly before us and proceed to its merits.

Photographs are admissible to evidence anything that a witness might himself be permitted to testify to, if identified and verified by the witness. *Hawkins* v. *State,* (1941) 219 Ind. 116, 37 N.E.2d 79. Relevant evidence will not be rejected simply because it is gruesome and cumulative. *Feller* v. *State,* (1976) 264 Ind. 541, 348 N.E.2d 8. Relevance is the logical tendency of evidence to prove a material fact. *Walker* v. *State,* (1976) 265 Ind. 8, 349 N.E.2d 161.

"The effect of a very prejudicial photograph on a jury must be weighed against its relevancy, and where the relevance is minimal and the prejudice to the particular theory of defense is great, to admit the photograph is reversible error." *Carroll* v. *State,* (1975) 263 Ind. 696, 338 N.E.2d 264 (dissenting opinion at 273).

"However, the determination of relative merit lies within the province of the trial judge and, absent clear error, his decision should not be overridden." *Carroll* v. *State, supra,* (concurring opinion at page 274.)

We have examined the exhibit in question and find no imbalance between its relevance and its tendency to influence the jury improperly. It depicts the decedent, naked from the

waist upward, lying on a cot or stretcher, apparently in the morgue. Three gunshot wounds are apparent in the right arm and four in the face and head. The exhibit was relevant to show the cause of death and that the decedent and his assassin had met face to face at close range. Although the photograph is very unpleasant to view, it appears to depict the decedent essentially as he was immediately following his murder. We are unable to understand counsel's reference to *Kiefer* v. *State,* (1958) 239 Ind. 103, 153 N.E.2d 899, and to his suggestion that the exhibit "bears additional surgical scars from the autopsy or from attempts to restore life," as such is not the case.

## ISSUE II

The charge of first degree murder was under Ind. Code (Burns 1975) 35-13-4-1(a). The defendant requested twenty peremptory jury challenges under Ind. Code (Burns 1975) 35-1-30-2, upon the basis that he was subject to the death penalty under Ind. Code (Burns 1975) 35-13-4-1(b), because the evidence would disclose a murder while "lying in wait." On appeal, he further argues that he was subject to the death penalty by reason of a kidnapping charge.

It was clear under the indictment that the defendant was not charged with a capital offense. A prior count of murder under the capital murder section of the statute 35-13-4-1(b) had been dismissed. The indictment contained no allegations bringing it under the capital murder provision. The court advised that there would be no death penalty instructions and that a death penalty verdict would not be acceptable. Additionally, we have since held the death penalty provisions of the murder statute to be unconstitutional. *Fair* v. *State,* (1977) 266 Ind. 380, 364 N.E.2d 1007; *French* v. *State,* (1977) 266 Ind. 276, 362 N.E.2d 834. Inasmuch as the defendant was not subject to the death penalty, he was entitled to but ten peremptory challenges. *Martin* v. *State,* (1974) 262 Ind. 232, 314 N.E.2d 60.

## ISSUE III

The defendant acknowledges that this Court will not weigh the evidence nor determine the credibility of the witnesses and that upon a review to determine the sufficiency of the evidence, we will consider only the evidence favorable to the verdict and all inferences that may be reasonably drawn therefrom. If such evidence and inferences would permit a reasonable trier of fact to find the existence of each element of the crime charged, beyond a reasonable doubt, the verdict will not be disturbed as being without support of sufficient evidence or as being contrary to law. *Baum* v. *State*, (1976) 264 Ind. 421, 345 N.E.2d 831; *Robinson* v. *State*, (1977) 266 Ind. 604, 365 N.E.2d 1218; *Young* v. *State*, (1977) 266 Ind. 557, 364 N.E.2d 1180; *Webb* v. *State*, (1977) 266 Ind. 554, 364 N.E.2d 1016.

The evidence favorable to the State revealed that the defendant trafficked in illegal drug sales and believed that the decedent had informed the grand jury concerning his illicit operations. State's witness, Mason, was an associate of the defendant in such business, was named as an unindicted co-conspirator in the conspiracy count and was in jail on a charge of having murdered the deceased. Mason appeared as a State's witness and testified to the aforestated facts. He stated that he participated with the defendant and one Trautman in the murder and related the following circumstances.

On Friday, April 18, 1975, the defendant contacted him, told him that the deceased had "went to the grand jury on him," that he was expecting to be arrested soon and asked him to get rid of the deceased by arranging for him to take a dose of contaminated heroin. Mason agreed, and he and the defendant attempted to obtain the contaminating agent on the following Sunday but were unable to do so that day. On that occasion, the defendant stated that the warrant for him would probably come out on the following day. In the meantime, Mason had commenced to work his way into the

decedent's confidence by suggesting that the decedent sell drugs for him, and the decedent had agreed.

At about daybreak on the following Tuesday, the defendant went to Mason's apartment and awakened him. He was frantic and said that he had just seen the decedent, stating the place. He said that he did not have time for the contaminated drug plan and instructed Mason to decoy the decedent into his automobile, upon the pretext of taking him to get some drugs to sell, but to drop him off at a designated remote spot in one of the city parks. The witness agreed, and as they departed from Mason's apartment, Mason observed Trautman was in the defendant's automobile with him. Mason proceeded south towards the place where the decedent was last seen by the defendant; and the defendant proceeded north in the direction of the park. Mason did as the defendant had instructed. He induced the decedent to enter his vehicle to accompany him to the place where he had drugs hidden. When they arrived at the designated spot in the park, he told the decedent that he did not want him to see where the drugs were hidden, so he instructed the decedent to get out of the car and wait for him and that he would return with the drugs. Instead, he abandoned the decedent and returned to his apartment. The decedent was found less than an hour later, dead of gunshot wounds, at the spot where he had been abandoned.

We hold the foregoing evidence to be substantial and probative and sufficient to warrant a reasonable trier of fact in finding, beyond a reasonable doubt, that the defendant, in consort with Mason, fraudulently decoyed the decedent from the place where he was contacted to the place where he was shot and that he and Mason united or combined with each other for the purpose of killing the decedent. Such findings are sufficient to support the verdicts.

The defendant faults the verdicts because much of the incriminating evidence came from an accomplice who was being

rewarded for his testimony and from another police informer who was also being rewarded. It is immaterial, on review, that much of the evidence came from unsavory persons who had an interest in the proceedings. This is a matter of credibility. *Fair* v. *State, supra.*

Another of the defendant's bases for reversal is that another of the State's witnesses related evidence which, in part, was contrary to the testimony of Mason. Such witness, Larry Austin, testified that while both he and the defendant were in jail, he overheard the defendant tell a third inmate that he had one Welton Trautman bring the decedent to the park and that he and Mason then shot him. Obviously, both versions could not be correct. However, that there were inconsistencies in the testimony of the State's witnesses that may materially have weakened its case does not alter the aforementioned standards of review and compel us to exclude the conflicting portions of such testimony. *Rosell* v. *State,* (1976) 265 Ind. 173, 352 N.E.2d 750.

The defendant also quarrels with the failure of the State to prove who actually killed the decedent, but we fail to grasp the significance of such argument. He was acquitted upon the charge of murder; and it was not necessary, in order to prove the conspiracy count, to prove that the object of such conspiracy had been accomplished. *Smith* v. *State,* (1960) 241 Ind. 311, 170 N.E.2d 794; *Hutchinson* v. *State,* (1963) 244 Ind. 345, 192 N.E.2d 748; *Miller* v. *State,* (1881) 79 Ind. 198; *Shircliff* v. *State,* (1884) 96 Ind. 369.

We find no reversible error, and the judgment of the trial court is affirmed.

Givan, C.J. and DeBruler, Hunter and Pivarnik, JJ., concur.

NOTE.—Reported at 366 N.E. 659.