**Conrad William PRICE, Defendant-Appellant,**

v.

**STATE of Indiana, Plaintiff-Appellee.**

No. 1–578A128.

Court of Appeals of Indiana, First District.

Dec. 18, 1979.

Rehearing Denied Jan. 8, 1980.

John G. Bunner, Bruce R. Heathcotte, Bunner, John & Heathcotte, Evansville, for defendant-appellant.

Theo. L. Sendak, Atty. Gen., Gordon E. White, Jr., Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

NEAL, Judge.

Defendant-appellant Conrad William Price was charged by information with delivery of a controlled substance, to-wit: codeine in an amount less than ten grams,[1] convicted after a trial by jury of possession of a controlled substance, and sentenced to a two-year term of imprisonment.

The defendant's appeal raises five issues for review:

A) Whether the evidence was sufficient to show that he was not entrapped;

B) Whether the trial court erred in admitting into evidence for the purpose of showing predisposition testimony concerning deliveries of controlled and uncontrolled substances between October 1 and November 18, 1976;

C) Whether the trial court erred in overruling his motion to withdraw the submission of the cause from the jury because of certain testimony by a police officer;

---

1. Ind.Code 35–24.1–4.1–1(a)(1) and (b) and 35–24.1–2–6(b)(1)(8), all since repealed.

D) Whether the trial court erred in admitting certain hearsay evidence; and E) Whether the verdict is supported by sufficient evidence.

We reverse on the basis of Issue D.

The evidence discloses that in 1972, Conrad William Price, an Evansville police officer, held a second job as security guard at the Evansville State Hospital where he met Nettie Bryant, a nurse, with whom he had an affair from the summer of 1973, until early in 1976. From August to November, 1974, Bryant lived in Price's home caring for his terminally ill daughter while Price and his wife were at work. During this time Bryant paid Price rent and gave him spending money. Their relationship ended in May or early July, 1976.

Gary Sprinkle, another police officer who also worked a second job as a hospital security guard, became acquainted with Bryant, learned of her prior involvement with Price, and in early October, 1976, recruited her as a police agent to inform solely on Price. Sprinkle placed a radio transmitter in Bryant's home and a recording device on her telephone.

Following Sprinkle's instructions to call Price, invite him over to reestablish their relationship, and attempt to purchase marijuana or any other controlled substance from him, including heroin if she could do so, Bryant telephoned Price on October 13 or 14, 1976, told him she had just moved, and invited him to visit her at her new residence. At that time, Price was assigned to a surveillance unit in the police department, a plain clothes operation aimed at blending into the local drug scene and developing sources of, and gathering, information.

Price visited Bryant the next day and she initiated a conversation about drugs, saying she needed drugs to combat her extreme state of depression. Price suggested that she use alcohol but she said she had to have drugs. Bryant told Price she would like to have LSD, heroin, or cocaine but Price told her she should not use these drugs because they were harmful.

Price visited Bryant at her home on four subsequent occasions at her request. Bryant repeatedly initiated phone conversations, and Price returned her calls when requested to do so. Price and Bryant had sexual relations during the first three of these visits. Bryant reported such activity to Sprinkle each time it occurred.

Introduced into evidence by stipulation were statements made by Bryant to Price during their initial telephone conversation on or about October 14, 1976, which included implied threats by Bryant to commit suicide by drowning or gunfire if she didn't "get something someplace pretty soon." Also placed into evidence was a transcript of an October 28, 1976 telephone conversation between Bryant and Price in which Bryant told Price that the drugs he had brought her during his third visit were a "mess of ____" which she had flushed down the sink. She demanded that he deliver mescaline, LSD or a pound of marijuana by the next day.

On the first of his last four visits, October 15, 1976, Price brought Bryant a small plastic bag of marijuana, a pipe and tobacco papers, and refused to accept any money. On October 27, he brought 23 tablets, two of which a police chemist testified contained codeine, a controlled substance; the other 21 contained no controlled substance. Price accepted $20 of $40 from Bryant who had offered $40.

On November 6, Price brought Bryant some capsules identified by the chemist as containing some other controlled substance. Price refused money offered by Bryant.

On November 18, Price brought Bryant 19 tablets, eight of which contained codeine and 11 of which contained no controlled substance. Bryant asked Price if he could use some money. He answered affirmatively and accepted $50. It was for this delivery that Price was arrested and tried.

Bryant testified that she had, on one occasion, seen marijuana growing in a pen at Price's house in which Price kept his dog. She said that Price's response when she brought it to his attention was "Yeah, the neighborhood kids had it." She also said

that Price had, in 1974, made offers to get her drugs of various kinds.

At the trial the court permitted Officer Sprinkle to testify that the defendant had a reputation for dealing in drugs and in stolen property, and that he had information from an unnamed informant, who did not testify, that the defendant had been dealing in drugs with Reitz High School students, and that specifically the students were using these drugs at his house during their lunch hours. He further testified that his unnamed informant had purchased drugs from the defendant.

In Issue D in appellant's brief, he raises the question of whether the State's reputation evidence was inadmissible hearsay.

In *Walker v. State*, (1970) 255 Ind. 65, 262 N.E.2d 641, the court held that when the defendant invoked the defense of entrapment he imposed upon the State the requirement of proving that it had probable cause to suspect that the defendant was engaged in illegal conduct. It further held that probable cause could be based on reliable hearsay. Evidence as to defendant's reputation to commit the offense charged could be heard for the limited purpose of determining whether or not the police officer had good cause to believe he was trafficking in narcotics.

*Sumpter v. State*, (1974) 261 Ind. 471, 306 N.E.2d 95, specifically held that reputation evidence to establish guilt is not admissible and was error. The court held, however, under the facts of that case in view of the overwhelming direct evidence on guilt that it was harmless error. The court based its decision partly on the constitutional grounds relative to the right of confrontation and partly on the history of the hearsay rule in Anglo-American jurisprudence. The court concluded that no evidence was more inherently suspect than reputation evidence based on the statements of out-of-court declarants.

*Locklayer v. State*, (1974) 162 Ind.App. 64, 317 N.E.2d 868, was an entrapment case. The court held that entrapment is a defense that goes to the merits of the charge against the defendant and as such is a factual issue to be resolved by the jury. In that case the trial judge, out of the presence of the jury, conducted a probable cause hearing and declared as a matter of law that probable cause existed, and thus the case escaped the evidentiary infirmity of inadmissible hearsay. While the court in the hearing heard the information in the possession of the police that amounted to probable cause, including hearsay and reputation, the jury did not.

In *Hardin v. State*, (1976) 265 Ind. 635, 358 N.E.2d 134, the court abandoned the probable cause requirement and adopted the predisposition rule. This was a subjective test. When the question of entrapment is raised, the court must make a two-part inquiry: (1) did police officers or their informants initiate and actively participate in the criminal activity; and (2) is there evidence that the accused was predisposed to commit the crime so that the proscribed activity was not wholly the idea of the police officials. If the evidence shows police activity absent any showing of predisposition on the part of the accused, entrapment has been established. *Hardin* did not resolve the hearsay problem.

In the cases decided under *Hardin, supra*, the court has approved as admissible evidence sufficient to sustain the proof of predisposition events occurring at the time the officers or their agents purchased the contraband from the defendant. Evidence of the defendant's ability to obtain a supply of heroin within a few minutes, several different schemes to accomplish his sale, multiple sales to the officers, and a large supply of contraband in his possession was held sufficient to show predisposition. *Hutcherson v. State*, (1978) Ind., 380 N.E.2d 1219. Evidence of defendant's willing answer, when told by the undercover agent that he was looking for something, that he had some "jive," and the fact that defendant led the officers to the restroom where the transaction was concluded, was held sufficient evidence of predisposition. *Cyrus v. State*, (1978) Ind., 381 N.E.2d 472. Similar acts of unlawful conduct are sufficient and admissible to show predisposition. *Powers v.*

*State,* (1978) Ind.App., 380 N.E.2d 598. Previous convictions of selling narcotics are admissible to show predisposition. *Hutcherson, supra.*

In a number of the foregoing cases decided since *Hardin, supra,* hearsay and reputation evidence as to defendant's predisposition was involved, but its admissibility was never litigated or discussed in the opinions. In *Medvid v. State,* (1977) Ind.App., 359 N.E.2d 274, however, the issue was squarely faced. There the sole evidence of predisposition was hearsay evidence of information secured from the police department without identification as to time, place or persons involved, and from an informer who did not testify. The court held that this evidence was highly prejudicial and its admission was reversible error. It held that evidence bearing upon the defendant's predisposition is subject to normal rules of admissibility.

The most recent case on the subject of entrapment and the rules of admissibility or nonadmissibility of hearsay in entrapment cases is *Stewart v. State,* (1979) Ind., 390 N.E.2d 1018. There the evidence of predisposition was that in the defendant's conversation with the police officers, defendant demonstrated that he was familiar with the drug terminology, was able to discuss prices and quantity, knew the source of supply, referred to suppliers as "my people," and indicated he would be happy to get the officers more. During the testimony of the officer, he was permitted, over objection as hearsay, to state that he had seen the defendant's prior record of drug convictions. The court cited *Medvid, supra,* with approval, but upheld the conviction on the ground that any error would be harmless since there was other substantial evidence of probative value of defendant's predisposition to commit the offense.

In the case at bar the informant Bryant was recruited specifically by the police officer to purchase a controlled substance from the defendant. Insomuch as the idea of the charged illegal conduct originated with the police, the State has the burden of proving a predisposition on the part of defendant to engage in the illegal activities. The evidence adduced by the State on the question of predisposition consisted of deliveries to Bryant prior to the charged delivery, but after the initiation of the plan by the police, of a small amount of marijuana, two prescription pills containing codeine, and some prescription pills containing another controlled substance. Defendant accepted $20 for some of it and refused money for the other. He further delivered to Bryant some pharmaceutical products of some sort that were not controlled substances, for which she complained bitterly and soundly berated defendant for his incompetence. These were delivered only after reminiscences of past favors, hints of future benefits, and veiled threats to her personal safety, all accompanied by moments of lascivious persuasions. For the delivery of the controlled substance for which he was charged, defendant was paid $50. Further evidence of predisposition consisted of Bryant's testimony that she had seen marijuana growing in defendant's dog pen, and that defendant had offered to get her various drugs two years before during a previous liaison between the two. It is further uncontradicted that he refused to get her hard drugs.

The challenged evidence of predisposition is the hearsay testimony of Officer Sprinkle that Price had a reputation for selling drugs to Reitz High School students and dealing in stolen property. This evidence was without identification as to time, place, or persons involved. The admission of this evidence is error pursuant to the authority of *Medvid, supra,* and *Stewart, supra.* Moreover, in view of the somewhat meager other evidence of predisposition, we feel that this testimony was highly prejudicial. We do not feel that we can treat the error as harmless as was done in *Stewart, supra,* for in that case there was other very convincing evidence of predisposition. Incompetent evidence of selling drugs to children is as damaging as one could imagine.

We do not feel in light of the above discussion that there were errors in issues A, B, C, and E.

We therefore order this cause reversed and remanded for a new trial.

Reversed.

LOWDERMILK, P. J., and ROBERTSON, J., concur.