James HUFF, Defendant-Appellant,

v.

STATE of Indiana, Plaintiff-Appellee.

No. 1–1082A289.

Court of Appeals of Indiana,
First District.

Jan. 11, 1983.

John D. Clouse, Michael C. Keating, Laurie A. Baiden, Evansville, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Palmer K. Ward, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

NEAL, Judge.

## STATEMENT OF THE CASE

Defendant-appellant James Huff was charged jointly in the Vanderburgh Superior Court with Dennis Schnell and Jerald Breeze as follows: Count I, dealing in cocaine, more than three grams, under Ind. Code 35–48–4–1(1); Count II, dealing in a Schedule II controlled substance, methaqualone, under Ind.Code 35–48–4–2(1); and Count III, conspiracy to deliver cocaine in an amount over three grams, under Ind. Code 35–41–5–2 and Ind.Code 35–48–4–1(1). In a separate trial, Huff was convicted by a jury and sentenced as follows: In Count I he was convicted of the lesser included offense of sale or possession of a legend drug, cocaine, a Class C felony, and received a two year suspended sentence. In Count II he was convicted of the lesser included offense of possession of a legend drug, methaqualone, a Class D felony, and received a two year suspended sentence; and in Count III he was found guilty as charged upon which the trial court first imposed a sentence of 20 years, and later suspended 14 years, leaving six years to serve under Count III. From these sentences, Huff appeals.[1]

We affirm.

## STATEMENT OF THE FACTS

The Evansville Police Department and the Vanderburgh County Sheriff's office solicited and received assistance from the Federal Drug Enforcement Administration in a drug investigation in the Evansville area during the fall and early winter of 1979. Special agents Herman Hogue and Michael L. Jackson were given this assignment, and, in conjunction with local authorities, they entered upon an investigation which culminated in the arrest and conviction of Huff. Posing as a gambler in high stakes poker with a lot of money to spend, Hogue, through a series of users and informants, made contact with Huff for the purpose of purchasing controlled substances from him. After preliminary contacts Hogue phoned Huff on October 30, 1979, and offered to buy cocaine. Hogue recorded the telephone conversation as well as numerous other calls which he subsequently made. The phone recordings, Hogue's testimony and Huff's own admissions at trial established that Huff knew the street and wholesale value of cocaine and methaqualone (quaaludes) and represented that he knew quality. He sold cocaine to other undercover officers and he sold to users numerous times. He got his supply from Schnell and got into the business because Schnell said "... there is some money to be made in it." Through Schnell, Huff made contacts in Florida for a source of cocaine, and he helped organize agent Hogue's purchase of a larger amount of cocaine. Huff had a supply of cocaine available when Hogue first called him, and, without any encouragement, he offered to sell him an ounce. Clandestine meetings were arranged, and tests were discussed. Other possible future transactions in drugs were also discussed between Hogue and Huff. The two met on November 1, 1979, in a restaurant parking lot in Huff's car, where Huff delivered an ounce of cocaine in a rice box. Hogue counted out $2,000, the amount which Huff had priced to him, and Huff put it with $6,000 that he had on his person. Hogue took the cocaine, and, upon parting, Huff told him to call when he was ready for more.

On November 15, Hogue purchased another ounce from Huff for $2,000, a price set by Huff, under similar clandestine circumstances as the November 1st sale. Huff volunteered that he had some quaaludes which Hogue could buy for $230 per thousand, and the price would be lower if he bought several thousand. Huff also of-

---

1. This case first was filed with the Indiana Supreme Court which, pursuant to Ind.Rules of Procedure, Appellate Rule 15(M), ordered it transferred to the docket of the Court of Appeals. *Huff v. State,* (1982) Ind., 440 N.E.2d 465. Because Huff only had to serve a six year sentence, the court ruled, "... the mere chance that a defendant may serve in excess of ten years imprisonment upon any one charge of an information is not the measure of this Court's jurisdiction under Ind.R.App. 4(A)(7)." *Id.* at 466.

fered to sell him "acid" (LSD) and 25 pounds of "weed" (marijuana) at a good price, which Hogue declined, but said he would be interested in one-fourth pound of cocaine and "make two or three ounces more." Hogue explained that he had asked for that large a quantity to see how much Huff could handle and perhaps get around him to his suppliers.

Prior to December 12, 1979, Hogue was in contact with Huff a number of times in arranging the purchase of the one-fourth pound of cocaine and 5,000 quaaludes. Through Huff direct contact was established with Breeze and Schnell. Much discussion ensued between Hogue and the three defendants concerning safe ways of consummating the transaction. Alternate ways were suggested and counter-suggested. Huff revealed that in the sale of that much cocaine it would have to come from contacts in Florida. As Breeze was apprehensive, many plans were suggested, made, and discarded for exchanging the cocaine and quaaludes and the $17,000 agreed price. Finally, Hogue and Jackson, by prearrangement, picked up Huff at the Great Scot store on the night of December 12. Huff directed them to drive to the Deaconess Hospital, where the "thing would go down." Huff and Hogue went into the hospital, and Huff led him to Dennis Schnell, and then returned to Jackson in the car. Schnell led Hogue to an upper floor waiting room to Breeze who set a gym bag on the floor. Schnell and Hogue picked it up, took it to the restroom, examined it, found the contraband, and returned to Breeze. Hogue told Breeze and Schnell he had to go to the car to get the money, which precipitated a quarrel with Breeze. Thereupon Hogue arrested Breeze, and Schnell fled but was arrested the next day. Huff was arrested by other officers in the car. The gym bag contained 5,000 quaaludes and four ounces of cocaine.

## ISSUES

Huff presents the following issues:

I. That he was the victim of entrapment;

II. The verdicts were inconsistent;

III. The trial court committed error in failing to sentence Huff to two years on Count III;

IV. The trial court committed error in granting State's motion to blank out portions of Huff's exhibits 1 through 7;

V. The trial court committed error in failing to grant a new trial upon newly discovered evidence and misconduct of counsel; and

VI. The trial court committed reversible error in permitting the introduction of certain evidence.

## DISCUSSION AND DECISION

*Issue I. Entrapment*

 Entrapment became an issue in the case when agent Hogue participated in the purchase of the controlled substances. A burden then devolved upon the State to prove beyond a reasonable doubt the necessary predisposition on the part of Huff to commit the unlawful act, as predisposition is related to one of the elements, subjective intent. *Silva v. State,* (1980) Ind.App., 410 N.E.2d 1342. Such a determination is within the exclusive province of the jury. *Davila v. State,* (1977) 172 Ind.App. 425, 360 N.E.2d 283. We will neither weigh the evidence nor judge the credibility of the witnesses. Rather we look to the evidence most favorable to the State, together with all reasonable inferences to be drawn therefrom. If there is evidence of probative value to support the decision of the trier of fact, the conviction will not be disturbed. *Silva, supra.* Evidence of an available supply, willing sale, several schemes to accomplish the sale, a large supply of contraband, other similar acts of unlawful conduct are sufficient evidence of predisposition on the part of a defendant to sustain the conviction. *Price v. State,* (1979) Ind.App., 397 N.E.2d 1043. The evidence as shown in the statement of facts is more than adequate. The jury was not bound to believe Huff's testimony, disputed by the officers, that he sold Hogue cocaine as a favor because he represented he was "in a bind."

*Issue II. Inconsistent verdicts*

Huff argues that when the jury found him guilty of the lesser included offense in Count I, it thereby found him not guilty of dealing in cocaine in an amount more than three grams. Therefore, the judgment of acquittal of the substantive charge is inconsistent with the finding of guilt on Count III, charging conspiracy to deliver cocaine. He contends an express agreement must be shown before the conspiracy count can stand.

■ The conspiracy statute, Ind.Code 35–41–5–2, reads as follows:

"(a) A person conspires to commit a felony when, with intent to commit the felony, he agrees with another person to commit the felony. A conspiracy to commit a felony is a felony of the same class as the underlying felony. However, a conspiracy to commit murder is a Class A felony.

(b) The state must allege and prove that either the person or the person with whom he agreed performed an overt act in furtherance of the agreement.

(c) It is no defense that the person with whom the accused person is alleged to have conspired:

(1) has not been prosecuted;

(2) has not been convicted;

(3) has been acquitted;

(4) has been convicted of a different crime;

(5) cannot be prosecuted for any reason; or

(6) lacked the capacity to commit the crime."

The Indiana Supreme Court has spoken on the sufficiency of proof in conspiracy. In *Williams v. State*, (1980) Ind., 409 N.E.2d 571, 573, it said:

"It is sufficient if the minds of the parties meet understandingly to bring about an intelligent and deliberate agreement to commit the offense, even though the agreement is not manifest by any formal words . . . To prove a conspiracy, the prosecution does not need to show a formal arrangement or the parties' use of specific words. A conviction may rest on circumstantial evidence alone; while evidence of a mere relationship or association is not sufficient, a conspiracy may be inferred from acts of the parties in pursuance of an apparent criminal purpose they have in common." (Citations omitted.)

Acquittal of the substantive charge is not inconsistent with the conviction of conspiracy. *Bates v. State*, (1977) 267 Ind. 8, 366 N.E.2d 659; *Brown v. State*, (1980) Ind. App., 403 N.E.2d 901; *Lee v. State*, 1979 Ind.App., 397 N.E.2d 1047. Commission of the offense and conspiracy to commit the same offense are separate offenses, and acquittal of one is not a bar to the other. *Brown, supra. See also, Weekley v. State*, (1981) Ind.App., 415 N.E.2d 152.

*Issue III. Error in failing to sentence Huff to two years on Count III*

■ This issue concerns the denial of Huff's request in a post trial memorandum for a reduced sentence due to mitigating circumstances. Count III was a Class A felony and the statutory penalty is 30 years with not more than 20 years added for aggravating circumstances, and not more than ten years subtracted for mitigating circumstances. Ind.Code 35–50–2–4. The trial court, therefore, entered 20 years, the least sentence available to him. Thereafter, the court suspended 14 years. Huff's argument consists of bare assertions of "constitutional inconsistency," unreasonable sentences, violations of the Eighth Amendment to the Constitution of the United States, and article I, § 16 of the Constitution of Indiana. All these arguments were demolished in *Hall v. State*, (1980) Ind., 403 N.E.2d 1382, when the court stated that such arguments were "addressed to the wrong branch of government."

■ In its turn, the State claims that the court erred in suspending the 14 years, claiming the sentence is non-suspendable under Ind.Code 35–50–2–2a(4). Apparently, the State believes conspiracy to deliver cocaine is treated the same as "dealing in cocaine . . . a Class A felony." The State

correctly asserts that error in sentencing is fundamental and can be raised for the first time on appeal. *State v. Palmer*, (1979) Ind., 386 N.E.2d 946; *Beasley v. State*, (1977) 267 Ind. 396, 370 N.E.2d 360; *Klein-richert v. State*, (1973) 260 Ind. 537, 297 N.E.2d 822. The rule applies to a petition on appeal by the State. *Rogers v. State*, (1979) Ind., 383 N.E.2d 1035. However, conspiracy is *not* one of the offenses that is non-suspendable. Ind.Code 35–50–2–2 provides:

"Suspension; probation

Sec. 2(a) The court may suspend any part of a sentence for a felony unless:

(1) the crime committed was a Class A or Class B felony and the person has a prior unrelated felony conviction;

(2) The crime committed was a Class C felony and less than seven (7) years have elapsed between the date the person was discharged from probation, imprisonment, or parole (whichever is later) for a prior unrelated felony conviction and the date he committed the Class C felony for which he is being sentenced;

(3) the crime committed was a Class D felony and less than five (5) years have elapsed between the date the person was discharged from probation, imprisonment, or parole (whichever is later) for a prior unrelated felony conviction and the date he committed the Class D felony for which he is being sentenced; or

(4) the felony committed was murder (IC 35–42–1–1); battery (IC 35–42–2–1) with a deadly weapon; kidnapping (IC 35–42–3–2); confinement (IC 35–42–3–3) with a deadly weapon; rape (IC 35–42–4–1) as a Class A felony; criminal deviate conduct (IC 35–42–4–2) as a Class A felony; child molesting (IC 35–42–4–3) as a Class A or Class B felony; robbery (IC 35–42–5–1) resulting in serious bodily injury or with a deadly weapon; arson (IC 35–42–1–1) for hire or resulting in serious bodily injury; burglary (IC 35–42–2–1) resulting in serious bodily injury or with a deadly weapon; resisting law enforce-ment (IC 35–44–3–3) with a deadly weapon; escape (IC 35–44–3–5) with a deadly weapon; rioting (IC 45–1–2) [sic] with a deadly weapon; dealing in cocaine or a narcotic drug (IC 35–48–4–1) as a Class A felony; or dealing in a schedule I, II or III controlled substance (IC 35–48–4–2) if the amount of controlled substance involved has an aggregate weight of three (3) grams or more.

(b) Whenever the court suspends a sentence for a felony, it shall place the person on probation under IC 35–7 [35–7–1–1—35–7–2–2] for a fixed period to end not later than the date the suspended sentence expires."

Ind.Code 35–41–5–2 defines the offense of conspiracy and states that "[a] conspiracy to commit a felony is a felony of the same class as the underlying felony." However, conspiracy is a separate offense from the underlying offense, and separate sentences are required. *Williams v. State*, (1981) Ind., 426 N.E.2d 662; *Weekley*, supra. *Elmore v. State*, (1978) 269 Ind. 532, 382 N.E.2d 893; *Collier v. State*, (1977) 173 Ind.App. 120, 362 N.E.2d 871. The State has furnished no authority which holds that conspiracy is included by implication in Ind.Code 35–50–2–2 as one of the non-suspendable offenses. We know of none. No statutory construction is required. The plain meaning of the statute is that "the court may suspend any part of a sentence for a felony unless . . .", *Id.*, the crime falls under an exception. Conspiracy is not a listed exception. Therefore the trial court did not err.

*Issue IV. Blanking out portions of Huff's exhibits 1 through 7*

Defendant's exhibits 1 through 7 consisted of various counts and amended counts of informations against Huff, Schnell and Breeze which contained a statement of the statutory penalty in the lower left corner. Though not objecting at the time they were admitted, the State, after the first juror had seen the first exhibit, moved the court to strike out the penalty provision. The motion was sustained over Huff's objection,

but the trial court did not admonish the jury on the theory that it would merely have given the procedure undue significance. Huff argues that the objection of the State came too late and the court erred in its ruling. He cites the general rule that a party waives an objection by not making it timely.

 We fail to see the relevance of the exhibits in the first place. Nevertheless, a jury should not be instructed of the penalty. *Debose v. State,* (1979) Ind., 270 Ind. 675, 389 N.E.2d 272. Clearly the court would not err in refusing to sustain the motion to strike evidence where no objection was made. *Spielman v. Herskovitz,* (1922) 78 Ind.App. 131, 134 N.E. 909. However, the determination of whether to sustain a motion to strike, and the determination of whether justifiable excuse existed for failure to make proper objection to incompetent evidence when offered, is committed to the sound discretion of the trial court. *Juskulski v. State,* (1934) 206 Ind. 503, 190 N.E. 423. The latter case had such a posture as the case at bar. *See also,* 23A C.J.S. *Criminal Law* § 1068–1069 (1961). We fail to see how Huff was prejudiced by the trial court striking the irrelevant and inadmissible penalty provision in the exhibit. He has not suggested any way except as speculation.

*Issue V. Newly discovered evidence and misconduct of opposing counsel*

 During the direct examination of Herman Hogue and the redirect examination of Michael L. Jackson, those agents testified without objection that Breeze and Schnell were both arrested or charged along with Huff, and their trials were pending. Huff seems to argue that reversible error exists because Breeze's and Schnell's cases had not actually been set for trial or the trial date had been vacated. Therefore, Huff continues, the prosecuting attorney misled the court and jury by putting on such testimony and thereby perpetrated a fraud. We disagree. Any error which may have existed was waived by Huff's failure to object. *Pavone v. State* (1980) Ind., 402

N.E.2d 976. The relevancy of this argument wholly escapes us. Huff put on evidence himself which showed that the three were jointly charged. Whether the joint defendants' separate cases were set for trial or not at the time of this trial is wholly immaterial one way or the other.

*Issue VI. Introduction of evidence*

 Huff argues that the trial court committed reversible error in admitting, over objection, the following exhibits: number 3 being cocaine purchased from Huff on November 1; number 5 being cocaine purchased from Huff on November 15; numbers 9, 10, 12, 13 and 14 being the contents of the gym bag acquired by Hogue from Breeze and Schnell on December 12 at the Deaconess Hospital. His objections at the time of trial were that they were evidence of other offenses, did not aid in proof of predisposition, amounted to entrapment, and were a violation of Huff's Fourteenth Amendment rights. The argument in his brief consists of the following statement: "The defendant's objections should have been sustained for the reasons stated at the trial, which reasons are adoption by reference." Such argument is insufficient as it is neither a cogent argument nor supported by citations. Ind.Rules of Procedure, Appellate Rule 8.3(A)(7); *Platt v. State,* (1976) 168 Ind.App. 55, 341 N.E.2d 219; *Weekley, supra.* In any event, evidence of other sales and evidence of matters occurring at the time of the charged sale are available to show predisposition. Entrapment is not a rule of evidence, but a rule of law. *Silva, supra; Price, supra; Powers v. State,* (1978) 177 Ind.App. 560, 380 N.E.2d 598.

For the above reasons, this cause is affirmed.

Judgment affirmed.

ROBERTSON, P.J., and RATLIFF, J., concur.