## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

R. Patrick Magrath
Alcorn Sage Schwartz & Magrath, LLP
Madison, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Samantha M. Sumcad
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Scott M. Vaughn,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff*

April 1, 2020

Court of Appeals Case No.
19A-CR-1293

Appeal from the Dearborn
Superior Court

The Honorable Jonathan N.
Cleary, Judge

Trial Court Cause No.
15D01-1902-F3-5

**May, Judge.**

[1] Scott M. Vaughn appeals his conviction of Level 3 felony dealing in methamphetamine,[1] Level 6 felony possession of a syringe,[2] and Class C misdemeanor possession of paraphernalia.[3] Vaughn presents three issues for our review:

1. Whether the trial court abused its discretion by admitting evidence of an alleged Facebook conversation between Vaughn and a confidential informant;

2. Whether the State presented sufficient evidence to convict Vaughn of Level 3 felony dealing in methamphetamine, Level 6 felony possession of a syringe, and Class C misdemeanor possession of paraphernalia; and

3. Whether Vaughn's fourteen-year sentence was inappropriate in light of the nature of his offense and his character.

We affirm.

## Facts and Procedural History

[2] In 2019, Eli McGuire was helping local law enforcement as a confidential informant (hereinafter "CI"). McGuire was told by a friend that Vaughn was selling methamphetamine. McGuire reached out to Vaughn on Facebook

---

[1] Ind. Code § 35-48-4-1.1(d)(1) (2017).

[2] Ind. Code § 16-42-19-18(a)(1) (2015).

[3] Ind. Code § 35-48-4-8.3(b)(1) (2015).

about buying drugs. Vaughn sent McGuire a picture of his stash of methamphetamine. Vaughn agreed to meet with McGuire to sell him six grams of methamphetamine. McGuire informed the police that he had set up a meeting.

[3] Prior to the meeting, the police provided McGuire with money for the purchase and a recording device. McGuire met Vaughn in a parking lot. Vaughn entered McGuire's car and produced multiple bags containing methamphetamine. McGuire bought four small baggies containing methamphetamine. After the sale was complete, Vaughn exited the car and was quickly apprehended. As part of a search incident to Vaughn's arrest, police found money, a syringe, a cut straw,[4] and a bag containing methamphetamine.

[4] Vaughn admitted to the police that he sold McGuire methamphetamine. Vaughn also gave the police permission to search his phone. Based on the police investigation, the State charged Vaughn with Level 3 felony dealing in methamphetamine, Level 6 felony possession of methamphetamine,[5] Level 6 felony possession of a syringe, and Class C misdemeanor possession of paraphernalia. A jury found Vaughn guilty of all four counts, but the trial court refused to enter the conviction of Level 6 felony possession of

---

[4] The probable cause affidavit stated that "short pieces of straw are commonly used to introduce illegal substances into the body." (App. Vol. II at 18.)
[5] Ind. Code § 35-48-4-6.1(a) (2014).

methamphetamine on double jeopardy grounds. The trial court sentenced Vaughn to fourteen years in prison with one year suspended to probation for his conviction of Level 3 felony dealing in methamphetamine, two years in prison with one year suspended to probation for his conviction of Level 6 felony possession of a syringe, and sixty-days for his conviction of Class C misdemeanor possession of paraphernalia. His sentences for possession of syringe and possession of paraphernalia were to be served concurrently with the conviction of dealing in methamphetamine.

# Discussion and Decision

## 1. Admission of Evidence

[5] "A trial court has broad discretion in ruling on the admissibility of evidence and we will disturb its rulings only where it is shown that the court abused that discretion." *Turner v. State*, 953 N.E.2d 1039, 1045 (Ind. 2011). An abuse of discretion occurs if the trial court's decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g* 875 N.E.2d 218 (Ind. 2007). Vaughn argues that the trial court abused its discretion when it admitted photos of a conversation Vaughn had with individuals using the Facebook Messenger app because the messages were not properly authenticated.

[6] "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the

item is what the proponent claims it is." Ind. Evid. R. 901. Authentication of an exhibit can be established by either "direct or circumstantial evidence." *Newman v. State*, 675 N.E.2d 1109, 1111 (Ind. Ct. App. 1996). Testimony that an item is what it is claimed to be, by a witness with knowledge, is sufficient to authenticate an item. Evid. R. 901. Distinctive characteristics like "the appearance, contents, substance, [and] internal patterns" taken together with all the circumstances is another way to authenticate an item of evidence. *Id*. "Letters and words set down by electronic recording and other forms of data compilation are included within Rule 901(a)." *Wilson v. State*, 30 N.E.3d 1264, 1268 (Ind. Ct. App. 2015), *trans. denied*. "Any inconclusiveness regarding the exhibit's connection with the events at issue goes to the exhibit's weight, not its admissibility." *Pavlovich v. State*, 6 N.E.3d 969, 976 (Ind. Ct. App. 2014), *trans. denied*.

[7] State's Exhibits 27-A and 28-A contain photos police took of a conversation on the phone that the State alleged Vaughn and another person had via Facebook Messenger. In the conversation, Vaughn was attempting to set up drug deals. The State took these photos after getting permission from Vaughn to search his phone. Officer Kolb testified he had taken the photos and they were a true and accurate copy of the photograph he took of Vaughn's phone. (Tr. Vol. IV at 134, 137.) The State did not elicit testimony as to who authored the conversation. Vaughn's counsel objected to the admission of both 27-A and 28-A arguing the photos had not been properly authenticated. The trial court overruled the objection and admitted both exhibits into evidence.

"Even though we have determined that a text message stored in a cellular telephone is intrinsic to the telephone, a proponent may offer the substance of the text message for an evidentiary purpose unique from the purpose served by the telephone itself. Rather, in such cases, the text message must be separately authenticated pursuant to Indiana Evidence Rule 901(a)."

*Hape v. State*, 903 N.E.2d 977, 991 (Ind. Ct. App. 2009), *trans. denied.* In *M.T.V. v. State*, 66 N.E.3d 960 (Ind. Ct. App. 2016), this Court concluded Facebook conversations were properly authenticated by testimony from the defendant admitting to the conversation and from an affidavit from Facebook's authorized record custodian. *Id.* at 964. Neither of those methods of authentication occurred here. While the State properly authenticated the photos of the phone through Officer Kolb's testimony indicating he took the photos, the State did not lay sufficient foundation to authenticate the conversation depicted in the photos. Thus, we conclude the trial court abused its discretion in admitting State's exhibits 27-A and 28-A. *See Richardson v. State*, 79 N.E.3d 958, 964 (Ind. Ct. App. 2017) (trial court properly denied admission of Facebook messages when State failed to properly authenticate the messages), *trans. denied.*

Having concluded the court improperly admitted State's Exhibits 27-A and 28-A, we next assess whether the error was harmless. "Harmless error is error that does not affect the substantial rights of a party given the error's likely impact on the jury in light of other evidence presented at trial." *Raess v. Doescher*, 883 N.E.2d 790, 796 (Ind. 2008), *reh'g denied*. "The improper admission of evidence is harmless error when the conviction is supported by such substantial

independent evidence of guilt as to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the conviction." *Barker v. State*, 695 N.E.2d 925, 931 (Ind. 1998), *reh'g denied*. The erroneous admission of evidence may also be harmless if that evidence is cumulative of other evidence admitted. *Donaldson v. Indianapolis Pub. Transp. Corp.*, 632 N.E.2d 1167, 1172 (Ind. Ct. App. 1994).

[10] Police arrested Vaughn after observing him perform a drug deal with their CI. During a search of Vaughn, officers located a syringe, a bag with a substance identified as methamphetamine, numerous other little baggies, and a cut straw. Police also seized money that matched the money that was given to the CI to purchase the drugs. Officer Jason Seikman testified to an interview conducted with Vaugh at the law enforcement center. Officer Seikman explained "[Vaughn] stated he was selling meth to pay bills. [Vaughn] knew he wasn't going to get out of it." (Tr. Vol. III at 10.) The CI also testified to other properly admitted electronic message conversations he had with Vaughn in which Vaughn arranged to sell methamphetamine. Therefore, any error in the admission of Vaughn's Facebook messages in State's Exhibits 27-A and 28-A was harmless because the evidence in question was cumulative of other properly admitted evidence. *See Leonard v. State*, 86 N.E.3d 406, 413 (Ind. Ct. App. 2017) (error in the admission of evidence is harmless if cumulative of other properly admitted evidence), *trans. denied*.

## 2. Sufficient Evidence

Vaughn argues the police entrapped him, and therefore, there is insufficient evidence to convict him of dealing in methamphetamine. 'Entrapment exists where an otherwise law-abiding citizen is induced through police involvement to commit the charged crime." *Lahr v. State*, 640 N.E.2d 756, 760 (Ind. Ct. App. 1994), *trans. denied*. Our legislature has defined entrapment::

> (a) It is a defense that:
>
>> (1) the prohibited conduct of the person was the product of a law enforcement officer, or his agent, using persuasion or other means likely to cause the person to engage in the conduct; and
>
>> (2) the person was not predisposed to commit the offense.
>
> (b) Conduct merely affording a person an opportunity to commit the offense does not constitute entrapment.

Ind. Code § 35-41-3-9.

If a defendant asserts the defense of entrapment and establishes police inducement, then the burden of proof shifts to the State. *Dockery v. State*, 644 N.E.2d 573, 577 (Ind. 1994). The State must either disprove police inducement by demonstrating beyond a reasonable doubt that "the defendant's prohibited conduct was not the product of the police efforts," *McGowan v. State*, 674 N.E.2d 174, 175 (Ind. 1996), *reh'g denied*, or establish the defendant's predisposition to commit the crime. *Dockery*, 644 N.E.2d at 577. If the State

does not meet its burden of proof, then entrapment has been established as a matter of law. *Id.*

[13] "We review a claim of entrapment using the same standard that applies to other challenges to the sufficiency of evidence." *Id.* at 578. We consider only the evidence supporting the verdict and draw all reasonable inferences therefrom. *Id.* We neither reweigh the evidence nor judge witness credibility. *Id.* If the record contains substantial evidence of probative value that would have permitted a reasonable trier of fact to infer guilt beyond a reasonable doubt, then we will uphold a conviction. *Id.*

[14] Vaughn contends the police induced his behavior by using a confidential informant to set up the controlled buy. The CI, in return for helping police arrest drug dealers, would receive consideration on his open case. Vaughn asserts the CI was an agent of law enforcement and because the police controlled the buys, provided the money, and set up surveillance of the buy, this all induced Vaughn to commit the crime of dealing in methamphetamine.

[15] Accordingly, the burden shifted to the State to either disprove inducement or demonstrate Vaughn was predisposed to commit the crime. *See McGowan*, 674 N.E.2d at 175 (holding State must disprove inducement *or* prove predisposition). The State argues Vaughn "was merely presented with the opportunity, which he took full advantage of[.]" (Appellee's Br. at 15.) Indiana Code § 35-41-3-9(b) states, "conduct merely affording a person an opportunity

to commit the offense does not constitute entrapment." However, our Indiana Supreme Court has explained:

> Part (b) of the statute is explanatory of the level of police activity that would be necessary to support the entrapment defense but this section does not negate the requirement of the necessary predisposition on the part of the accused. We have consistently held that if the accused had the predisposition to commit the crime and the police merely afforded him an opportunity to do so, then the defense of entrapment is not available.

*Baird v. State*, 446 N.E.2d 342, 344 (Ind. 1983). Thus, if the police merely afforded a citizen an opportunity to commit a crime, then the State may not have induced that citizen's criminal behavior, *see, e.g., Shelton v. State*, 679 N.E.2d 499, 502 (Ind. Ct. App. 1997) (evidence police "merely placed the deer decoy off the road where the Sheltons could see it" was not adequate to demonstrate inducement sufficient to entitle Sheltons to jury instruction on entrapment), but it does not relieve the State of its obligation to demonstrate a defendant's predisposition.

[16] First, we look to whether the police induced Vaughn to deal methamphetamine. The CI contacted Vaughn only twice before Vaughn offered to sell to him. Additionally, Vaughn set the price of the drugs, set up the time and location of the deal, brought the drugs, and completed the deal. However, that is not the end of our inquiry. The State was also required to prove Vaughn was predisposed to commit dealing in methamphetamine. *See Price v. State*, 397 N.E.2d 1043, 1046 (Ind. Ct. App. 1979) ("Insomuch as the

idea of the charged illegal conduct originated with the police, the State has the burden of proving a predisposition on the part of defendant to engage in the illegal activities.").

[17]     "Whether a defendant was predisposed to commit the crime charged is a question for the trier of fact," and the State must prove that predisposition beyond a reasonable doubt using "evidence subject to the normal rules of admissibility." *Dockery*, 644 N.E.2d at 577. Several factors may be relevant to determining whether a defendant was predisposed to commit a crime:

> (1) the character or reputation of the defendant; (2) whether the suggestion of criminal activity was originally made by the government; (3) whether the defendant was engaged in criminal activity for a profit; (4) whether the defendant evidenced reluctance to commit the offense, overcome by government persuasion; and (5) the nature of the inducement or persuasion offered by the government.

*Kats v. State*, 559 N.E.2d 348, 353 (Ind. Ct. App. 1990), *trans. denied*. Additional facts that suggest criminal predisposition include familiarity with jargon and prices, engaging in multiple transactions, or arranging future transactions. *Riley v. State*, 711 N.E.2d 489, 494 (Ind. 1999).

[18]     Vaughn argues the multiple requests by the CI persuaded him to sell the methamphetamine. However, the State provided testimony that Vaughn was known to sell drugs. The CI testified he was connected to Vaughn through a friend who had previously purchased drugs from Vaughn. (Tr. Vol. III at 223.) Further, the CI contacted Vaughn only twice before Vaughn willingly offered to

sell him methamphetamine. State's Exhibit 33-A contained Facebook messages between Vaughn and the CI, Vaughn sent multiple pictures of methamphetamine, understood the slang terms used for the methamphetamine, and continued to message the CI about buying from him after they initially failed to figure out a time to meet. *See Henrichs v. State*, 455 N.E.2d 599, 601 (Ind. 1983) (defendant's understanding of drug trafficking terms and readiness to sell drugs showed a predisposition).

[19] Because the evidence demonstrates Vaughn was predisposed to commit crime, and the police did not induce Vaughn into dealing in methamphetamine, but rather provided him an opportunity, we are not convinced Vaughn was entrapped into committing his offense. *See Wallace v. State*, 498 N.E.2d 961, 965 (Ind. 1986) (entrapment defense failed when there was sufficient evidence to demonstrate the defendant acted on his own accord).

## 3. Appropriate Sentence

[20] Vaughn argues his sentence is inappropriate in light of his character and the nature of his offenses. Our standard for reviewing this issue is well settled.

> We "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). "Although appellate review of sentences must give due consideration to the trial court's sentence because of the special expertise of the trial bench in making sentencing decisions, Appellate Rule 7(B) is an authorization to revise sentences when certain broad conditions are satisfied." *Shouse v. State*, 849

N.E.2d 650, 660 (Ind. Ct. App. 2006), *trans. denied* (citations and quotation marks omitted). "[W]hether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). In addition to the "due consideration" we are required to give to the trial court's sentencing decision, "we understand and recognize the unique perspective a trial court brings to its sentencing decisions." *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007).

*Couch v. State*, 977 N.E.2d 1013, 1017 (Ind. Ct. App. 2012), *reh'g denied*, *trans. denied*. The appellant bears the burden of demonstrating his sentence is inappropriate. *Amalfitano v. State*, 956 N.E.2d 208, 212 (Ind. Ct. App. 2011), *trans. denied*. Although Vaughn appeals only his sentence for Level 3 felony dealing in methamphetamine, "[o]ur review of the sentence should focus on the forest - the aggregate sentence - rather than the trees - consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Gleason v. State*, 965 N.E.2d 702, 712 (Ind. Ct. App. 2012).

[21] When considering the nature of the offense, the advisory sentence is the starting point for determining the appropriateness of a sentence. *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind. 2007), *clarified on reh'g* 875 N.E.2d 218 (Ind. 2007). A Level 3 felony is punishable by a fixed term between three and sixteen years, with the advisory sentence being ten years. Ind. Code § 35-50-2-5(b) (2014). The trial court sentenced Vaughn to fourteen years; thus, he received a sentence between the advisory and the maximum. A Level 6 felony is punishable by a

fixed term between six months and two-and-one-half years. Ind. Code § 35-50-2-7(b) (2016). The trial court sentenced Vaughn to two years; thus, he received a sentence between the advisory and the maximum. The sentence for a Class C misdemeanor is punishable by a fixed term of not more than sixty days. Ind. Code § 35-50-3-4 (1978). The trial court sentence Vaughn to sixty days; therefore, he received the maximum sentence.

[22] Vaughn was arrested after selling methamphetamine to a CI. Vaughn used social media and text messages to communicate with the CI and set up the deal. There is nothing particularly egregious regarding the nature of Vaughn's offense, however his character does warrant an aggravated sentence.

[23] When considering the character of the offender, one relevant fact is the defendant's criminal history. *Johnson v. State*, 986 N.E.2d 852, 857 (Ind. Ct. App. 2013). Vaughn has a lengthy juvenile record including adjudications for battery, intimidation, and receiving stolen property. Vaughn also has adult convictions of escape, criminal confinement, possession of a controlled substance, theft, and auto theft. Vaughn argues his difficult childhood should entitle him to a more lenient sentence. However, "evidence of a difficult childhood is entitled to little, if any, mitigating weight." *Bethea v. State*, 983 N.E.2d 1134, 1141 (Ind. 2013). Given Vaughn's poor character as demonstrated by his many adult convictions and juvenile adjudications, we cannot say Vaughn's sentence is inappropriate. *See Clark v. State*, 26 N.E.3d 615, 619 (Ind. Ct. App. 2014) (defendant's extensive criminal history showed bad character and allowed for aggravated sentence), *trans. denied*.

# Conclusion

We conclude any evidence improperly admitted was harmless error because the improperly admitted evidence was cumulative of other properly admitted evidence. Additionally, the State provided sufficient evidence to demonstrate Vaughn was not entrapped. Finally, Vaughn's poor character allowed for an aggravated sentence and thus his sentence was not inappropriate. Accordingly, we affirm.

Affirmed.

Crone, J., and Pyle, J., concur.