Robert MUENCH, Petitioner,

v.

Thomas ISRAEL, Warden; and Attorney General of the State of Wisconsin, Respondents.

No. 80–C–619.

United States District Court, E. D. Wisconsin.

May 21, 1981.

Charles Bennett Vetzner, State Public Defender, Madison, Wis., for petitioner.

Michael R. Klos, Asst. Atty. Gen., Madison, Wis., for respondents.

## MEMORANDUM AND ORDER

WARREN, District Judge.

Petitioner, Robert Muench, has filed a petition for writ of habeas corpus. He contends he was denied due process of law and the right to present a defense in his trial for the first degree murder of Douglas (Hippie) Bertilson. On December 2, 1971, a jury found the petitioner guilty of the first degree murder of Hippie Bertilson. Judge Robert Pfiffner sentenced the petitioner to life imprisonment.

Petitioner raises essentially two grounds for relief in his petition. First, he asserts that the trial judge erred by excluding the proffered testimony of a psychiatrist that petitioner did not have the mental capacity to form the specific intent to kill. Petitioner argues that this failure, coupled with the second alleged error, mandates the issuance

of the writ based on the seventh circuit's decision in *Hughes v. Matthews*, 576 F.2d 1250 (7th Cir. 1978). Second, petitioner asserts that the judge's instructions to the jury on the presumption of intent—Wisconsin Criminal Jury Instruction 1100—violate his constitutional right to due process.

 The facts of the events leading to the death of Hippie Bertilson are undisputed and are exhaustively set out in the Wisconsin Supreme Court's decision in *Muench v. State*, 60 Wis.2d 386, 210 N.W.2d 716 (1973). A brief summary will suffice for the purposes of this petition. On the evening of August 2, 1971, the petitioner and a friend, Dennis Farber, were in a bar known as The Other Place, in Chippewa Falls, Wisconsin. They had just finished work at the local carnival. During the evening, other employees of the carnival came into the bar. One of the persons in the second group was the deceased, Hippie Bertilson. At some point during the evening, while everyone was drinking, the petitioner and his friend got into several arguments with Hippie and his friends. At approximately midnight that evening, the petitioner and his friend left the bar. Outside the bar, the petitioner's friend, Dennis Farber, got into a fight with the deceased. Bertilson was the aggressor, and during the fight other members of the Bertilson group joined in; Farber was very badly beaten. At one time, Hippie stuck Farber's head into a puddle of water. Petitioner did not actually get involved in the fight, but was hit twice by Hippie's friends.

After the fight broke up, Farber and the petitioner began to leave. Farber, however, went to his car and got a gun, and the petitioner got a knife. Farber then went back toward the deceased, waving the gun at him. The deceased approached Farber, and they started fighting again. Farber hit the deceased across the head with the gun and the two struggled to the ground. When they were on the ground, the petitioner grabbed Bertilson by the collar, pulled him away from Farber and stabbed him twice in the back.

The petitioner and Farber then fled the scene in Farber's car. According to Farber's trial testimony, while in the car, the petitioner told him that "he thought he might have stabbed someone, but he didn't know." He said, "he didn't know if he stabbed one or two guys or if he stabbed anyone." The next day, the petitioner and his friend turned themselves into the police.

At the trial, the petitioner testified he could not remember anything that happened from the time he was hit in the head during the first fight until some time the next morning. Other testimony at the trial revealed that petitioner had been drinking all night, but there was conflicting testimony as to how intoxicated he may have been. Finally, the defense counsel attempted to place in evidence the testimony of a psychiatrist that had examined the petitioner. If allowed to testify, the psychiatrist would have stated that the petitioner had an inadequate personality and, thus, could not form the specific intent to kill. The trial court, however, precluded any testimony from psychiatrists regarding intent based on the Wisconsin Supreme Court's rule that psychiatric testimony is not permitted on intent.

At the close of the evidence, the Court instructed the jury on first degree murder and second degree murder. In addition, the judge instructed the jury on intoxication as a defense. The jury requested reinstruction on these points and then found the petitioner guilty of first degree murder.

Petitioner asserts that the facts presented here are identical to those presented in *Hughes v. Matthews, supra*, and, consequently, the Court is bound by the seventh circuit's opinion. In *Hughes*, the petitioner was convicted of two counts of first degree murder. The evidence introduced at trial showed that petitioner broke into his estranged wife's parents' home and shot and killed his wife and a neighbor who had attempted to intervene in the dispute. At the trial, the petitioner attempted to introduce psychiatric evidence of his lack of the capacity to form intent, but the trial judge excluded it. The defendant presented no

other defense at trial. The jury was instructed pursuant to the Wisconsin Criminal Jury Instructions 1100, which provides:

When there are no circumstances to prevent or rebut the presumption, the law presumes that a reasonable person intends all of the natural, probable and usual consequences of his deliberate acts. If one person assaults another violently with a dangerous weapon likely to kill and the person thus assaulted dies therefrom, then when there are no circumstances to prevent or rebut this presumption the legal and natural presumption is that death was intended.

The jury then found petitioner guilty of two counts of first degree murder.

In his opinion in *Hughes v. Matthews*, 440 F.Supp. 1272 (E.D.Wis.1977), Judge Gordon held that the operation of Wisconsin Criminal Jury Instruction 1100 and the exclusion of psychiatric evidence on intent combined to create a conclusive presumption of intent. Based on *Morisette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952) and *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), Judge Gordon held that the conclusive presumption violated the petitioner's right to due process because it effectively eliminated intent as an element of the crime relieving the state of the burden of proving all elements of the crime beyond a reasonable doubt.

On appeal, the seventh circuit affirmed Judge Gordon's decision that the exclusion of psychiatric evidence, together with the presumption of intent instruction, created an unconstitutional conclusive presumption. It went further, however, and held that the exclusion of psychiatric testimony on the capacity to form intent in a single-phased trial was also a violation of the constitutional rights of the petitioner to present a defense.

The court reached its decision regarding the exclusion of psychiatric testimony only after finding that Wisconsin recognized psychiatric evidence of intent as relevant and competent and that Wisconsin had arbitrarily excluded such evidence. *Hughes v.*

*Matthews*, 576 F.2d at 1256–1258. *See Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *Morisette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952). The court found that Wisconsin's justifications for excluding the relevant and competent evidence were insufficient to outweigh defendant's right to present a defense.

The petitioner here argues that both the bases of the seventh circuit's decision in *Hughes v. Matthews* are applicable to the facts here. First, he alleges that the exclusion of psychiatric evidence coupled with the presumption of intent instruction, creates a conclusive presumption in violation of petitioner's constitutional right to due process. Second, he argued that the mere exclusion violates the rule set out in *Hughes.*

In response, the respondents assert that the Wisconsin Supreme Court's holding in *Steele v. State*, 97 Wis.2d 72, 294 N.W.2d 2 (1980), is applicable to the facts here. In *Steele*, a case decided two years after *Hughes*, the Wisconsin Supreme Court squarely addressed the question of whether psychiatric evidence of the capacity to form intent was reliable and competent evidence. The court held that it was not and, therefore, was properly excludable in a single phased trial as well as a bifurcated trial. *Id.* at 97, 294 N.W.2d 2. In bifurcated trials, the issue of guilt is tried first. Then, if there is a plea of not guilty by reason of insanity, a second phase is held, after a finding of guilt, in which the defendant has the burden of proving insanity. Because of the ruling in *Steele*, the respondents contend that the actual holding of *Hughes* is no longer valid. They do not, however, contest the analysis of *Hughes* and apply a similar analysis to the rule in *Steele.*

Petitioner contends that the Court is bound by *Hughes* and need not consider the *Steele* decision. In any event, the petitioner argues that *Steele* only addresses the second basis of the *Hughes* decision, and the first basis still requires the granting of a writ.

Although the facts of the *Hughes* case are similar to those presented here, they differ in at least one significant aspect, which petitioner overlooks, and which the Wisconsin Supreme Court overlooked in *Steele*. In *Hughes*, the only defense defendant offered at trial went to the issue of proving his lack of intent. The only evidence on lack of intent he offered was the testimony of the psychiatrist. Excluding that testimony, therefore, precluded the defendant from raising any defense as to intent. In this case, the petitioner's defense of lack of intent was not limited only to psychiatric evidence. In addition to that evidence, the petitioner put on evidence that he was drunk and that he could not remember what had happened that night. This evidence went to the issue of intent and the judge instructed the jury as to the defense of intoxication. In applying this court's rationale in *Muller v. Israel*, 510 F.Supp. 730 (E.D.Wis.1981), the Court would conclude that there was no conclusive presumption created.

Unlike *Hughes*, other circumstances were presented to vitiate the presumption on intent. The existence of other circumstances to show the lack of intent made the instruction on presumption of intent inoperative. *Muller v. Israel*, 510 F.Supp. at 735. Consequently, it did not eliminate intent as an element of the crime or shift the burden of proof to the petitioner as to intent. Distinguishing *Hughes* on this basis, the Court finds that the combination of the exclusion of psychiatric evidence on intent, together with the presumptive instruction, did not violate petitioner's constitutional rights.

■■■ The second issue raised by petitioner's first claim for relief is whether the Court is bound by the holding of *Hughes v. Matthews* regarding the use of psychiatric evidence on intent or whether it should consider the issue in light of the Wisconsin Supreme Court's decision in *Steele v. State*. In *Hughes*, the seventh circuit stated that in determining if a state had violated a defendant's right to present a defense, the court must determine whether the evidence is relevant and competent. Then, if it is

relevant and competent, the court must examine the state's reasons for excluding the evidence to decide if the rule is arbitrary. In deciding if the evidence is relevant and competent, the seventh circuit held that federal courts must look to state law. *Id.* at 1256 n. 13. Because a state may not arbitrarily classify evidence as irrelevant or incompetent, the Court, however, is not bound by a state's arbitrary determination of relevancy and competency. *Id.*

Having set out the applicable standard, the *Hughes* court examined the Wisconsin precedent and held that Wisconsin considered psychiatric evidence as both relevant and competent. The court found the evidence relevant under Wisconsin law because it found that Wisconsin considers psychiatric evidence "highly relevant" on the issue of capacity to stand trial. *Id.* at 1257. *State ex rel Haskins v. Dodge County Court*, 62 Wis.2d 250, 266, 214 N.W.2d 575 (1974). *See also, King v. State*, 75 Wis.2d 26, 43, 248 N.W.2d 458 (1977). (Psychiatric testimony as to character of accused relevant to support his theory of accident.) It further assumed that psychiatric testimony would "pertain to and have some bearing on the resolution of the issues." *Id.* at 1256–57.

The seventh circuit also found the evidence competent under Wisconsin law. It defined the issue of competency as whether "Wisconsin recognizes psychiatric testimony as trustworthy evidence of mental state." *Id.* at 1257. In reviewing the Wisconsin law, the court found that Wisconsin considered psychiatric testimony trustworthy because it was widely used in other parts of the criminal proceedings. According to the court, psychiatric evidence was used for questions of insanity in the second stage of a bifurcated trial and to determine if a defendant had the capacity to stand trial. In addition, the seventh circuit opined that psychiatric diagnosis "satisfies the general test for admissibility as scientific evidence since it is 'sufficiently established to have gained general acceptance in the particular field to which it belongs.'" (citations omitted.) *Id.* at 1258. In dicta, the court ex-

pressed doubt as to the validity of a system which permitted psychiatric evidence on the issue of insanity but not on intent. *Id.* at 1257. *See United States v. Brawner,* 471 F.2d 969, 999 (D.C.Cir.1972).

Finally, the court held that the state's justifications for the rule were arbitrary. It found that a fear of letting the guilty go free was not appropriate when the jury was only deciding between first and second degree murder. In addition, because *Hughes* was not a bifurcated trial, the court found no validity to the state's concern for the continuation of a bifurcated trial system.

In *Steele v. State,* the Wisconsin Supreme Court addressed the same issue as the seventh circuit did in *Hughes.* It held, however, that psychiatric evidence on the capacity to form intent was neither competent nor relevant nor probative of lack of capacity to form intent. In *Steele,* the defendant had attempted to offer psychiatric evidence on his capacity to form the specific intent during the guilt phase of his bifurcated trial. The trial court refused admission of this evidence based on the existing Wisconsin law.

On review, the Wisconsin Supreme Court upheld the trial court's decision, finding that its reasons for the rule, *i. e.,* a protection of the defendant's fifth amendment rights against self incrimination, a protection of the bifurcated trial system, and a fear of letting the guilty go free, were adequate reasons to support the rule. Although recognizing the congruency of psychiatric evidence offered on intent and on insanity, the court, nevertheless, held that psychiatric evidence on intent was irrelevant and incompetent. The court found a significant·difference in the use of psychiatric evidence for the determination of insanity and the determination of lack of capacity to form intent. According to the Wisconsin court, the determination of insanity requires only a gross evaluation of a person's conduct, whereas a determination of the capacity to form intent requires "a fine tuning of an entirely different nature." *Id.* 97 Wis.2d at 96, 294 N.W.2d 2. It noted that there was currently great uncertainty

in the field of psychiatry as to whether a psychiatrist can determine to any degree of scientific certainty whether a person intended to do something. *Id.* at 93, 294 N.W.2d 2. *See* 1979 Wis.L.Rev. 628 (1979). In addition, the court expressed doubt as to whether psychiatric evidence on intent was scientifically sound. It further stated that "the examination of trial records ... show a marked propensity of those who purport to have psychiatric expertise to tailor their testimony to the particular client whom they represent. (citations omitted.) 97 Wis.2d at 97, 294 N.W.2d 2.

Finally, the court addressed the criticism of the seventh circuit regarding the exclusion of psychiatric evidence on intent when such evidence on insanity is allowed. Quoting from *Bethea v. United States,* U.S.App. D.C., 365 A.2d 64, 86 n. 46, the court stated:

> We do not quarrel with the notion that psychiatric testimony is of general relevance to the issue of responsibility .... Care must be exercised, however, to distinguish such general relevancy from the unwarranted additional assumption that psychiatric sciences are capable of direct proof of the existence of the necessary mental state as defined by law. *Id.* 97 Wis.2d at 94, 294 N.W.2d 2.

In a footnote the court also distinguished the use of the defense of intoxication and the exclusion of psychiatric evidence on the lack of intent. It noted that intoxication was part of the common human experience and that the realm of psychological problems is not something lay persons could understand and apply. *Id.* at 94–95 n.7, 294 N.W.2d 2.

The decision in *Steele* undercuts the seventh circuit's factual findings that Wisconsin considers psychiatric evidence of intent relevant, competent and probative. Therefore, this Court must consider whether the Wisconsin Supreme Court arbitrarily classified the evidence as irrelevant and incompetent.

The respondent, in his brief, has cited an impressive array of authorities tending to support the Wisconsin Supreme Court's decision in *Steele.* The cited authorities lend

credence to respondent's argument that the Wisconsin court was not arbitrary in determining that psychiatric evidence on intent was irrelevant and incompetent.

Additional support for the Wisconsin Supreme Court's decision comes from the ninth circuit's decision in *Wahrlich v. Arizona*, 479 F.2d 1137 (9th Cir. 1973), and from the United States Supreme Court's decision in *Fisher v. United States*, 328 U.S. 463, 66 S.Ct. 1318, 90 L.Ed. 1382 (1946). In *Wahrlich*, the ninth circuit upheld the denial of a writ of habeas corpus in which the petitioner had asserted that he was denied his right to present a defense because the trial court excluded psychiatric evidence of his lack of capacity to form intent. The court held "the state of the developing art of psychiatry is such that we are not convinced that psychiatric testimony directed to a retrospective analysis of the subtle gradations of specific intent has enough probative value to compel its omission." 479 F.2d at 1138. In *Fisher v. United States*, the Supreme Court declined to require a trial court to instruct a jury on diminished capacity as a defense to first degree murder. The Court's reluctance was based on its inability to conclude that psychiatric evidence on the lack of capacity to form intent was sufficiently reliable. Thirty-three years later, the Supreme Court still harbored doubts as to the reliability of psychiatric diagnosis. *See Addington v. Texas*, 441 U.S. 418, 429, 99 S.Ct. 1804, 1811, 60 L.Ed.2d 323 (1979).

■ Although it appears at first glance that the Wisconsin Supreme Court's decision in *Steele* was designed to subvert the seventh circuit's holding in *Hughes*, closer examination of the case dispels any such notion. Rather, the Wisconsin court sought only to clarify its position on the issue. This Court is bound by the Wisconsin Supreme Court's interpretation of Wisconsin laws, providing that such interpretations and such laws are not unconstitutionally arbitrary. In this instance, after a thorough review of the facts, the Court finds that Wisconsin's decision holding that psychiatric evidence on the lack of capacity to form intent is both incompetent and irrelevant, is not arbitrary. That the Wisconsin Supreme Court chose to draw the line as to the admissibility of psychiatric evidence at that point was not arbitrary. It was based on its firm belief, founded in the facts, that such evidence does not have sufficient reliability or probativeness to be admissible. Therefore, the Court finds that the trial court committed no reversible error in excluding the psychiatric evidence at petitioner's trial.

Turning to petitioner's second ground for relief that Wisconsin Criminal Jury Instruction 1100 violates his right to due process, the Court finds that for the reasons stated earlier in this decision and pursuant to *Muller v. Israel*, 510 F.Supp. 730 (1981), the instruction was not unconstitutional. There were circumstances existing which rebutted the presumption and, therefore, the presumption was inoperative. Furthermore, from the record, it does not appear that the jury could have been misled or affected by the giving of the inoperative instruction.

Based on the foregoing, the Court finds that petitioner's motion for a writ of habeas corpus must be and is hereby DENIED.